1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

9

10

11

12

13

14

15

| | |
|---|---|
| ANGELA CASTELLANO,<br><br>Plaintiff,<br><br>v.<br><br>CHARTER COMMUNICATIONS, LLC<br>a Delaware limited liability company,<br><br>Defendant. | CASE NO. 3:12-cv-05845-RJB<br><br>ORDER GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION FOR SUMMARY<br>JUDGMENT, DENYING<br>PLAINTIFF'S MOTION TO STRIKE,<br>AND GRANTING IN PART AND<br>DENYING IN PART DEFENDANT'S<br>MOTION TO STRIKE |

16

17

18

This matter comes before the court on Defendant's Motion for Summary Judgment. Dkt. 25. The court has considered the relevant documents and the remainder of the file herein.

19

I.   RELEVANT FACTS

20

***Introduction***. Plaintiff Angela Castellano brings this lawsuit against her former

21

employer, Defendant Charter Communications, LLC. Dkt. 1. Castellano was diagnosed with

22

multiple sclerosis (MS) while she was employed at Charter. Dkt. 26-1, at 52. Castellano now

23

brings state law claims, alleging that Charter discriminated against her because of her disability;

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 1

failed to provide a reasonable accommodation or accessible work place; created a hostile work environment; retaliated against her; and wrongfully terminated her. Dkt. 1. She brings a federal law claim that Charter unlawfully interfered with her rights under the Family and Medical Leave Act ("FMLA"). *Id.*

**Background/Pre-Diagnosis.** Castellano began working for Charter in the early 2000s as a Retention Specialist at Charter's Vancouver call center. Dkt. 26-1, at 9-12. During her employment, Castellano suffered symptoms resulting from MS, which was not diagnosed until May of 2010. Dkt. 26-1, at 24-25; Dkt. 26-1, at 37. Prior to diagnosis, Castellano requested leave on multiple occasions and Charter never denied her requests. Dkt. 26-1, at 24-25; Dkt. 26-1, at 37.

Castellano also began experiencing financial difficulties during this time, filing for Chapter 13 bankruptcy on December 29, 2009.[1] Dkt. 27-1, at 3. In her bankruptcy schedules, Castellano indicated that she had no contingent or unliquidated claims of any nature. Dkt. 27-2, at 13.The bankruptcy court confirmed her bankruptcy plan on April 6, 2010. *Id.* at 4.

**Diagnosis.** On May 14, 2010, Castellano was diagnosed with MS by Dr. Edward Kim and Dr. Marlene Dietrich. Dkt. 32, at 3, 28. Following her diagnosis, Castellano and her doctors submitted Charter's FMLA paperwork. Dkt. 26-1, at 53. Dr. Dietrich informed Charter that Castellano's condition was permanent; that Charter should provide Castellano a comfortable chair; and that Castellano may need leave "at least" once every six months for doctor's appointments but "maybe more often if symptoms worsen." Dkt. 32, at 31. Dr. Dietrich noted that "[e]xacerbations are unpredictable" and that Castellano "may need up to one week off every

---

[1] The court has taken judicial notice of Castellano's Chapter 13 bankruptcy proceedings pursuant to Charter's request. *See* Dkt. 27.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO STRIKE, AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO STRIKE- 2

three months." *Id.* The form shows that it was faxed first on June 29, 2010, and then "refaxed"

on July 2, 2010, and again on July 6, 2010. *Id.*

    ***Medical Leave.*** On July 13, 2010, a Charter representative requested that Castellano talk

with her doctor because she had been absent more than her doctor had estimated. Dkt. 32, at 81.

On July 19, 2010, Dr. Edward Kim then filled out an additional medical certification, which

provided that Castellano's condition "affects essential job functions, including typing, walking to

meetings and other functions requiring extended walking." Dkt. 32, at 37. "Overtime work

demands may be a difficult stressor and challenge for her" and Castellano "should not be held to

the same compliance standards as other employees." Dkt. 32, at 38. Dr. Kim warned that leave

"is difficult to predict as symptom/problem development may fluctuate, necessitating different

time periods away from job." *Id.* Dr. Kim estimated that Castellano may require medical leave

once or twice per week, with each leave lasting anywhere from one day to two weeks. *Id.*

    On August 12, 2010, Charter sent a fax to Dr. Kim asking Dr. Kim to clarify how much

overtime Castellano could work on a weekly basis and how many weeks, months, or years that

Castellano would require medical leave. Dkt. 32, at 36. Dr. Kim responded on August 19, 2010,

informing Charter that his opinions regarding her ability to work each day are subjective. Dkt.

32, at 39. Dr. Kim said, "It is difficult to be as specific as you request and I cannot directly

quantify hours or days of need when the condition and symptoms may change or worsen due to a

multitude of factors." *Id.* Dr. Kim attempted to respond to Charter's inquiries by reiterating that

overtime appeared to be a difficult stressor for Castellano and that a set schedule would be

preferred. *Id.* In response to Charter's second clarification, Dr. Kim provided that "[i]t is not

possible . . . to directly predict how many absences she may need for medical reasons in a week

or a month . . . Some reasonable degree of flexibility and understanding is appropriate. Her need

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 3

1   for this accommodation may be indefinite, as her condition is a chronic lifelong neurologic

2   condition that is often progressive." *Id.*

3       During this time, Castellano accumulated attendance "points" due to her absences despite

4   turning in Charter's medical paperwork. Dkt. 26-1 at 52-53. Castellano feared that she would

5   lose her job because she had accumulated approximately seventeen points and employees were

6   usually fired after six points. Dkt. 26-1 at 53. Charter finally approved Dr. Kim's latest

7   evaluation. *Id.* Charter then "backdated everything," removing all but three of Castellano's

8   attendance points. Dkt. 26-1, at 57-59.

9       ***Castellano Meets with HR.*** On January 20, 2011, Castellano met with Charter's Human

10   Resources Generalist, Debbie Schofield, to discuss issues relating to Castellano's medical leave.

11   Dkt. 32, at 5, 74. Charter's Human Resources Director, Tom Rothengass, joined the conversation

12   and, according to Castellano, she had the following exchange with him:

13       He says, "Are your doctors real doctors?" . . . And then he says, "What are you
    still doing here?" And I said I wanted to continue to use my brain and walk. And

14       he said to me, "You have a sidewalk in front of your house. Why don't you walk
    out there." And then he says, "Also, you still drive. Why don't you go to a park,

15       walk around there. I recommend you do anything, but continue working here.
    Don't make me make that choice for you." And then he says, "What's the

16       difference between MS and cancer?" And I said, "I don't know. Maybe I'll live. I
    don't know."

17

18   Dkt. 26-1, at 64-65. Schofield then had Castellano sign an agreement titled "Understanding of

19   Providing Appropriate and Timely Documentation," to which Castellano objected because of the

20   strict deadlines the document imposed on her doctors. Dkt. 32 at 6, 71. The form was not a form

21   that all employees had to sign, but, according to Castellano, she was required to sign the form

22   before Charter would discuss her accommodation needs. Dkt. 32, at 6.

23

24   ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 4

1    Castellano claims that Rothengass' treatment of her was so bad that she did not want to

2    come to work. Dkt. 32, at 8. Castellano went home in tears after the meeting. Dkt. 32, at 6-7. On

3    January 25, 2011, Castellano filed a formal complaint against Rothengass for his behavior. Dkt.

4    32, at 6. A Human Resources employee from Charter's corporate office followed up on the

5    complaint, directing the call center not to use the "Understanding of Providing Appropriate and

6    Timely Documentation" form and recommending disciplinary action for Rothengass due to his

7    comments. Dkt. 32, at 77. There is no elaboration in the record on the type of disciplinary action

8    recommended.

9    Castellano's doctor ordered her to take one month of leave because of the stress from the

10   claimed intimidation and harassment, which Charter granted. Dkt. 32, at 8; Dkt. 26-1, at 66.

11   ***Castellano's Return From Leave***. After Castellano returned from leave in late February,

12   Castellano did not receive wages for four weeks because Charter's deductions for health

13   insurance coverage exceeded her paycheck. Dkt. 32, at 10; Dkt. 26-1, at 67. Castellano went to

14   Human Resources and Charter resolved the issue by crediting her on future paychecks. Dkt. 32,

15   at 10; Dkt. 26-1, at 67.

16   Castellano also encountered workstation issues relating to her ability to print documents.

17   *Id*. Rothengass was terminated about three days after Castellano returned from her month of

18   leave. Dkt. 32, at 8; Dkt. 25, at 8. According to Charter, Rothengass' termination was due "in

19   part" to the incident about which Castellano had complained. Dkt. 26-1, at 74.

20   ***Performance Evaluation.*** On April 22, 2011, Castellano received her 2010 performance

21   evaluation. Dkt. 32, at 2. As of 2009, Castellano's performance ratings all met or exceeded

22   performance standards. *Id*. 2010 marked the first year in which Castellano received a poor

23   performance evaluation; she received a "D" for "Does Not Meet Performance Expectations" in

24   ORDER GRANTING IN PART AND DENYING IN
     PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT, DENYING PLAINTIFF'S MOTION
     TO STRIKE, AND GRANTING IN PART AND
     DENYING IN PART DEFENDANT'S MOTION
     TO STRIKE- 5

1 "Compliance" and "Average Handle Time." *Id.* Castellano claims that her bonus was reduced

2 because of this evaluation. *Id.* Castellano also claims that two non-disabled employees with

3 performance issues received higher bonuses. Dkt. 32, at 3.

4     ***June through December of 2011.*** In June of 2011, Castellano filed an FMLA form with

5 Charter, further documenting her need for an ergonomically appropriate chair and for extra time

6 to walk between meetings. Dkt. 32, at 54. Dr. Dietrich also said that Castellano "needs

7 handicapped accessible doorways!" *Id.*

8     On July 26, 2011, as Castellano exited the building during a fire drill, she heard an

9 employee behind her say, "Uh-Oh, we're going to burn." Dkt. 26-1, at 60. Castellano mentioned

10 the comment to a co-worker, who then reported it. Dkt. 26-1, at 61. Charter followed up with

11 Castellano but Castellano did not know who had made the statement. *Id.*

12     On September 15, 2011, Charter had a team meeting in which Management passed out

13 customer compliments to everyone except for Castellano. Dkt. 32, at 11. According to

14 Castellano, she had received customer compliments that Charter could have shared. *Id.*

15     On September 21, 2011, Castellano's new supervisor criticized Castellano for working

16 during her break. Dkt. 32, at 12. Castellano testified that "[i]n all ten years that I was there, I

17 never had that happen." *Id.*

18     On September 22, 2011, Castellano's supervisor announced at the start of a meeting that

19 Castellano would need to leave two minutes early because of how long it takes Castellano to get

20 back to her seat. Dkt. 32, at 12. Castellano felt humiliated. *Id.* With two minutes left in the

21 meeting, the supervisor again announced in front of everyone that Castellano needed to leave. *Id.*

22 The same thing happened at a meeting on September 28, 2011. *Id.* On the following day

23 Castellano complained to HR but was told to discuss the issue with her supervisor. Dkt. 26-1, at

24 ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 6

13. The supervisor's solution was to dismiss everyone two minutes early. *Id.* Castellano again felt humiliated and mocked. *Id.*

On October 19, 2011, Castellano was not allowed to keep a 6-inch fan on her desk without a note from her doctor. Dkt. 32, at 13.

On October 27, 2011, Castellano's chair malfunctioned when she sat down. Dkt. 32, at 13. Castellano could not get out of the chair without assistance. *Id.*

On October 29, 2011, Dr. Dietrich completed another health provider questionnaire that reiterated Castellano's need for handicapped accessible doorways and an ergonomically appropriate chair, along with a small fan for her desk and a water bottle. Dkt. 32 at 56.

On November 23, 2011, Castellano's chair again malfunctioned and Castellano fell to the ground. Dkt. 32, at 14.

In December 2011, Castellano was disciplined because she had exceeded the number of absences per week prescribed under the approved intermittent leave accommodation. Dkt. 26-1, at 80. Castellano challenged the corrective action and Charter rescinded it. *Id.*

***Castellano Leaves Charter.*** Castellano claims that she reached a point where she could no longer perform her job because of the lack of accommodation and harassment. Dkt. 32, at 14. She claims that the hostile environment heightened the symptoms of her condition. *Id.* The last day on which Castellano worked for Charter was January 17, 2012. Dkt. 26-1, at 91-92. On January 20, 2012, Castellano submitted a written letter of resignation, indicating that her resignation was "due to stress and medical." Dkt. 26-7, at 2.

On January 24, 2012, Liberty Mutual, the third-party administrator of Charter's Short Term Disability Plan, sent Castellano a letter approving her claim for benefits "based on [her] inability to perform the duties of [her] job.' Dkt. 26-8, at 2. In February of 2012, a Charter

1  representative sent an e-mail to Castellano, stating that "Charter remains committed to working

2  to accommodate [Castellano's] medical condition." Dkt. 26-1, at 95. In response, Castellano

3  testified that she could never feel comfortable about returning to Charter. Dkt. 26-1, at 95-96.

4  Castellano claims that Charter never reached out to her with additional information about

5  continuing to work before or after she left employment. Dkt. 32, at 14. Castellano further claims

6  that she did not receive any notices or information about open positions or positions that she was

7  qualified to perform. *Id.*

8  II.    PROCEDURAL HISTORY

9      On March 16, 2011, Castellano filed a charge of discrimination with the EEOC. Dkt. 26-

10  9, at 2. On May 9, 2013, the EEOC closed its file on Castellano's charge and issued her notice of

11  right to sue. Dkt. 26-10, at 2.

12      On September 20, 2012, Castellano filed the instant lawsuit in this Court. Dkt. 1. Charter

13  filed this motion for summary judgment on October 8, 2013, arguing that all of Castellano's

14  claims are meritless. Dkt. 25. Castellano filed a response on October 28, 2013, and moved to

15  strike e-mails attached to Charter's declaration on grounds of hearsay, foundation and the

16  collateral source rule. Dkt. 28. Charter filed its reply on November 1, 2013, responding to the

17  merits of Castellano's response, responding to Castellano's motion to strike, and also moving to

18  strike certain declarations filed by Castellano with her response. Dkt. 33.

19  III.    STATEMENT OF THE ISSUES

20      There are seven issues before the court. The court must decide (1) whether to strike

21  declarations and exhibits from Castellano's response and Charter's reply; (2) whether judicial

22  estoppel bars Castellano's claims; and whether to grant summary judgment against Castellano on

23

24  ORDER GRANTING IN PART AND DENYING IN
    PART DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT, DENYING PLAINTIFF'S MOTION
    TO STRIKE, AND GRANTING IN PART AND
    DENYING IN PART DEFENDANT'S MOTION
    TO STRIKE- 8

1  (3) her hostile work environment claim, (4) her disparate treatment claim, (5) her reasonable

2  accommodation claim, (6) her retaliation claim, and/or (7) her FMLA interference claim.

3  IV.   <u>MOTIONS TO STRIKE</u>

4  In her response, Castellano moved to strike e-mails attached to Charter's counsel's

5  declaration on grounds of hearsay and lack of foundation, any declarations offered by Charter in

6  its reply, and any reference to disability payments that Castellano has received. Dkt. 28, at 2.

7  Castellano's motion should be denied. The court has noted Castellano's objections and will

8  accord Charter's counsel's declaration the appropriate weight. Regardless, the court has not relied

9  on the e-mails in its analysis. Also, Charter also did not offer any declarations in its reply. And,

10  finally, for the purposes of this summary judgment motion the court has not considered or

11  referenced any disability payments Castellano may have received.

12  In its reply, Charter moved to strike the following: the declarations of Stanley Horak,

13  Kristen Dillenburg, and Angela Castellano to the extent they offer improper opinion testimony

14  on legal conclusions; the declaration of Dillenburg because she was not disclosed in either

15  Castellano's initial disclosures or her discovery responses; various portions of these declarations

16  "because they lack foundation, personal knowledge, or are speculative, offer improper opinion,

17  and/or constitute hearsay"; certain paragraphs of the Castellano declaration that are inconsistent

18  with her deposition testimony; and Castellano's statements that are unsupported by the record.

19  Dkt. 33, at 3-4.

20  Charter's motion to strike Horak's and Castellano's declarations is denied. The court has

21  noted these objections, as well as the relevance of these items, and the court will accord them the

22  proper weight. The court has distinguished and disregarded Horak's legal opinions but has taken

23

24  ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 9

1  note of the authority he cited. The court also notes the objections regarding Castellano's

2  declaration and will accord it the proper weight.

3      Charter also moved to strike Dillinburg's declaration. Castellano has not filed a surreply.

4  For the purposes of this summary judgment, Dillenburg's declaration should be stricken. *See*

5  Fed. R. Civ. P. 37.

6                              V.    <u>DISCUSSION</u>

7  **A.    Legal Standard on Summary Judgment**

8      Summary judgment is proper only if the pleadings, the discovery and disclosure materials

9  on file, and any affidavits show that there is no genuine issue as to any material fact and that the

10  movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

11  entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

12  showing on an essential element of a claim in the case on which the nonmoving party has the

13  burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of

14  fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for

15  the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

16  (1986) (nonmoving party must present specific, significant probative evidence, not simply "some

17  metaphysical doubt."). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

18  material fact exists if there is sufficient evidence supporting the claimed factual dispute,

19  requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby,*

20  *Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

21  *Association*, 809 F.2d 626, 630 (9th Cir. 1987). "[A]t summary judgment, the judge must view

22  the evidence in the light most favorable to the nonmoving party." *T.W. Elect. Service Inc.*, 809

23  F.2d at 630.

24  ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 10

**B.      Castellano's Claims Not Barred by Judicial Estoppel**

Charter argues that Castellano's claims are barred by the doctrine of judicial estoppel because Castellano never declared her potential claims as an asset in her ongoing bankruptcy proceeding. Dkt. 25, at 13-15. Thus, the issues before the court are, first, whether Castellano had a duty to disclose her disability discrimination claims in her bankruptcy, and, if so, whether Castellano's failure to do so bars her claim under the doctrine of judicial estoppel.

"In the bankruptcy context, a party is judicially estopped from asserting a cause of action not raised in a reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements." *Hamilton v. State Farm Fire & Cas. Co*., 270 F.3d 778, 782 (9th Cir. 2001) (citing *Hay v. First Interstate Bank of Kalispell*, N.A., 978 F.2d 555, 557 (9th Cir.1992). "[I]f the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a known cause of action such that it must be disclosed." *Id.* quoting (*In re Coastal Plains*, *Inc.,* 179 F.3d 197, 208 (5th Cir. 1999).

Castellano has raised an issue of fact sufficient to preclude summary judgment by pointing out that her claims against Charter did not arise until after she had filed for bankruptcy. Castellano's bankruptcy plan was confirmed on April 6, 2010, and her claims did not arise until after she was diagnosed with MS in May of 2010. Dkt. 27-1, at 4; Dkt. 32, at 3. Castellano did not have a duty to disclose her discrimination claims in her initial reorganization plan or debtor's schedules because she was, at that time, unaware of her potential discrimination claims. For the same reason, Castellano did not have a duty to amend her plan after confirmation to include her claims against Charter. *See Johnson v. Si-Cor Inc.,* 107 Wn. App. 902, 910-11, 28 P.3d 832 (2001).

1    These facts prevent the doctrine of judicial estoppel from barring Castellano's claims.

2    Charter relies on *Hamilton* to argue that Castellano's duty to disclose potential claims continued

3    for the duration of the bankruptcy proceeding. Dkt. 33, at 5 (citing 270 F.3d at 782). However,

4    *Hamilton* posits that judicial estoppel is only proper when the plaintiff had knowledge of claims

5    prior to the bankruptcy plan's confirmation. The plaintiff in *Hamilton* actually threatened

6    litigation before filing for bankruptcy. *Hamilton,* 270 F.3d at 781.

7    Not one of the cases cited by Charter involved claims that arose after the bankruptcy

8    plan's confirmation, as they did in the case at hand. *See Hamilton*, 270 F.3d at 781 (plaintiff filed

9    for bankruptcy after threatening litigation); *In re Coastal Plains*, *Inc.,* 179 F.3d 197 (plaintiff

10   filed suit one week after filing for bankruptcy, and plaintiff's claims arose out of the business

11   dispute that caused the bankruptcy); *Hay*, 978 F.2d at 557 (plaintiff "learned of the facts that led

12   to the discovery of [plaintiff's] claims sometime during the month preceding the month in which

13   [plaintiff's] reorganization plan was confirmed."); *Allers-Petrus v. Columbia Recovery Grp.,*

14   *LLC*, 2009 WL 1160061 (W.D. Wash. Apr. 29, 2009) (plaintiff filed suit in September of 2008

15   and the bankruptcy plan was confirmed in November of 2008); *Love v. Tyson Foods, Inc.,* 677

16   F.3d 258, 260-61 (5th Cir. 2012) (plaintiff filed suit in May of 2008 and the bankruptcy plan was

17   confirmed in September of 2008); *Balthrope v. Sacramento County HHS,* 398 Fed. Appx. 285

18   (9th Cir. 2010) (court relied on *Hamilton* to apply judicial estoppel but the opinion contains

19   insufficient information to determine when the dismissed claims arose).

20   Accordingly, the doctrine of judicial estoppel should not bar Castellano's claims against

21   Charter.

22   **C.     Issues of Fact Preclude Dismissing Castellano's Hostile Work Environment Claim**

23

24   ORDER GRANTING IN PART AND DENYING IN
     PART DEFENDANT'S MOTION FOR SUMMARY
     JUDGMENT, DENYING PLAINTIFF'S MOTION
     TO STRIKE, AND GRANTING IN PART AND
     DENYING IN PART DEFENDANT'S MOTION
     TO STRIKE- 12

1   Charter argues that Castellano's hostile work environment claim does not meet the

2   required elements. Castellano must prove the following: (1) that she was disabled within the

3   meaning of RCW 49.60.180; (2) that the harassment was unwelcome; (3) that it was because of

4   the disability; (4) that it affected the terms or conditions of employment; and (5) that it was

5   imputable to the employer. *Robel v. Roundup Corp*., 148 Wn.2d 35, 44-45 (2002). Charter does

6   not dispute the first, second or third elements. Instead, Charter argues that the harassment was

7   not severe enough to alter the conditions of her employment. Dkt. 25, at 20. Alternatively,

8   Charter argues that any harassment was not imputable to Charter. Dkt. 25, at 20-21.

9   As for the severity of the harassment, "a satisfactory finding on this element should

10   indicate '[t]hat the conduct or language complained of was so offensive or pervasive that it could

11   reasonably be expected to alter the conditions of plaintiff's employment.'" *Robel,* 148 Wn.2d at

12   46 (quoting 6A WASH. PRAC., *Wash. Pattern Jury Instr. Civ.* WPI 330). Castellano has raised

13   issues of fact that preclude finding against her on this element. Charter itself identified multiple

14   instances of humiliation that, contrary to its argument, raise an issue of fact as to whether the

15   harassment was severe enough to alter the conditions of Castellano's employment. The exchange

16   between Rothengass and Castellano is one such instance. Castellano went home in tears

17   afterwards and her doctors ordered her to take one month of leave due to the claimed harassment

18   and humiliation. Castellano has met her burden in raising an issue of fact as to this element of a

19   hostile work environment claim.

20   As for whether the harassment is imputable to Charter, Castellano has raised multiple

21   issues of fact. In applying the fifth element, "the jury must find either that (1) 'an owner,

22   manager, partner or corporate officer personally participate[d] in the harassment' or that (2) 'the

23   employer . . . authorized, knew, or should have known of the harassment and . . . failed to take

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 13

1 reasonably prompt and adequate corrective action.'" *Robel*, 148 Wn.2d at 47 (quoting *Glasgow*

2 *v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 407 (1985)).

3       An issue of fact exists as to whether Rothengass was a manager. As the Director of

4 Human Resources, a rational trier of fact could find that Rothengass had the authority to affect

5 Castellano's wages, hours, and working conditions, which would be sufficient to establish

6 Rothengass as a manager. *See Robel*, 148 Wn.2d at 48 n.5. After all, Castellano reported to

7 Human Resources whenever she had issues regarding her wages, hours, or working conditions.

8       There are also issues of fact as to the adequacy and promptness of Charter's corrective

9 actions. Charter asserts that its termination of Rothengass in itself defeats Castellano's claim of

10 harassment. However, Castellano has raised an issue of fact as to whether Rothengass was

11 terminated "promptly" and whether his termination was even a corrective action. Rothengass

12 remained employed when and after Castellano returned to work, which was more than a month

13 after the incident. In addition, Charter's investigation into the incident did not suggest

14 Rothengass be terminated, and Charter itself denied to Castellano that the termination was solely

15 a result of Castellano's complaint. *See* Dkt. 26-1, at 74.

16       These issues of fact preclude granting summary judgment in Charter's favor.

17 **D.**    **Issues of Fact Preclude Summary Judgment on Castellano's Disparate Treatment**

18 **Disability Claim**

19       Charter also argues for summary judgment on Castellano's disparate treatment disability

20 claim. Dkt. 25, at 15-18. To survive summary judgment, Castellano must set forth a *prima facie*

21 case of discrimination. *Id.* A *prima facie* case requires Castellano to prove that (1) she has a

22 disability, (2) she suffered an adverse employment action because of her disability, (3) she did

23 satisfactory work prior to the adverse employment action, and that (4) she was replaced by a

24 ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 14

1  non-disabled person. *Riehl v. Foodmaker, Inc.,* 152 Wn.2d 138, 150 (2004); *Cluff v. CMX Corp.*

2  *Inc.,* 84 Wn. App. 634, 638, 929 P.2d 1136 (1997). If the employee meets the burden of

3  establishing a *prima facie* case, the burden of proof shifts to the employer to produce a

4  legitimate, nondiscriminatory explanation for the adverse employment action. *Riehl,* 152 Wn.2d

5  at 150. The ultimate burden then shifts back to the employer to prove that the employee's stated

6  reasons are in fact pretext for discriminatory intent. *Id.* (citing *Hill v. BCTI Income Fund-I*, 144

7  Wn.2d 172, 182 (2001)).

8      Issues of fact prevent finding against Castellano on her *prima facie* case. First, Charter

9  does not dispute that Castellano has a disability. As to the second element, Castellano testified

10  that she was harassed to the point of resigning from Charter, and she provided evidence that

11  Charter's Human Resources director asked her to resign because of her disability. Moreover, a

12  hostile work environment can amount to an adverse employment action, and thus the issues of

13  fact regarding Castellano's hostile work environment claim also preclude summary judgment on

14  Castellano's disparate treatment claim. *See Robel*, 148 Wn.2d at 74 n.24.

15      Third, Castellano received all positive performance reviews up until 2010, the year in

16  which she alleges the harassment and disparate treatment began. This indicates satisfactory job

17  performance up until that point. It remains an issue of fact as to whether Castellano performed

18  her job adequately enough from May 2010 through 2012 to satisfy the third element. There is

19  sufficient evidence for a rational trier of fact to conclude that any unsatisfactory performance

20  was only a result of Charter's discrimination, hostile work environment, and/or lack of

21  accommodation.

22      Fourth, the evidence is inconclusive as to whether Castellano was replaced by a non-

23  disabled person. However, relevant federal cases may be looked to for guidance in construing

24  ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 15

1 and applying Washington's antidiscrimination laws. *See Dean v. Municipality of Metro. Seattle-*

2 *Metro*, 104 Wn.2d 627, 636 (1985) (citing *Glasgow v. Georgia Pac. Corp.*, 103 Wn.2d 401

3 (1985)). In Title VII cases, the fourth element of a *prima facie* case of discrimination may be

4 satisfied by evidence that similarly situation non-protected employees were treated more

5 favorably. *See Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007). Indeed, in

6 its motion for summary judgment Charter states that the fourth element of a *prima facie* case

7 requires the following:  "[Plaintiff] was treated less favorably than an individual without a

8 disability." Dkt. 25, at 15. Castellano's evidence points to multiple instances where she was

9 treated less favorably as a disabled employee, such as being required to fill out the

10 "Understanding of Providing Appropriate and Timely Documentation" form. Moreover,

11 evidence suggests that Rothengass demonstrated hostility towards Castellano because of her

12 disability, and asked her to resign because of her disability. These instances raise an issue of fact

13 as to the fourth and final element of a *prima facie* case.

14       Accordingly, Castellano has provided evidence raising issues of fact regarding her *prima*

15 *facie* case. Furthermore, assuming Charter can prove its adverse employment actions were

16 nondiscriminatory, Castellano's evidence provides sufficient grounds for a rational trier of fact to

17 find pretext. Rothengass' actions were directly related to Castellano's disability and seemed to be

18 fueled by his frustration with her disability. In addition, all of Castellano's claims of

19 discrimination arose after she was diagnosed with MS and relate to her requests for medical

20 leave and disability accommodations. When viewed in the light most favorable to Castellano, the

21 evidence is sufficient to show pretext for the purposes of precluding summary judgment.

22 Therefore, Charter's motion for summary judgment on Castellano's disparate treatment claim

23 should be denied.

24
ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 16

**E.     Issues of Fact Preclude Summary Judgment on Castellano's Failure to Accommodate Claim**

Charter argues that Castellano's failure to accommodate claim fails as a matter of law because Castellano was not a qualified to perform the essential functions of her position, Charter met its duty to provide reasonable accommodation, and because Castellano did not cooperate in the interactive process. Dkt. 25, at 18-20.

To survive summary judgment, Castellano must prove (1) that she had a disability; (2) that she was qualified to perform the essential functions of her job; (3) that she gave notice to Charter of her disability; and (4) that the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the disability. *Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 145 (2004) (*quoting Hill*, 144 Wn.2d at 192-93). "Generally, the best way for the employer and employee to determine a reasonable accommodation is through a flexible, interactive process." *Frisino v. Seattle Sch. Dist. No. 1*, 160 Wn. App. 765, 779, 249 P.3d 1044 (2011) (citing RCW 49.60.040(7)(d)).

Charter only disputes elements two and four. Dkt. 25, at 19-20. As to the second element, Castellano was qualified to perform the essential functions of her job prior to diagnosis, proven by her positive performance reviews up until that point. In addition, a rational trier of fact could conclude that any unsatisfactory performance even after diagnosis was a result of Charter's discrimination, hostile work environment, and lack of accommodation.

In regards to the fourth element, Castellano's doctors recommended and Castellano requested handicap accessible doorways and an ergonomically appropriate chair. Charter failed to accommodate both requests. Castellano also requested a parking spot near the entryway, which Charter denied despite Castellano's medical reports documenting her impaired mobility.

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 17

1  Dkt. 32, at 10. Castellano also testified that Charter ignored her doctor's recommendations that

2  Charter space out their meetings. Dkt. 32, at 10.

3         Castellano has also raised an issue of fact as to Charter's commitment to the interactive

4  process. Castellano and her doctors repeatedly submitted medical certifications noting the

5  unpredictability of Castellano's condition. Nonetheless, Charter repeatedly required more

6  documentation and clarification regarding her disability and her requested accommodations.

7          Summary judgment on Castellano's accommodation claim should not be granted.

8  **F.    Castellano's Retaliation Claim Survives Summary Judgment.**

9         Charter argues that Castellano is unable to meet the essential elements of a retaliation

10 claim, and that it is entitled to summary judgment because Castellano did not specifically address

11 retaliation in her response. Dkt. 25, at 23; Dkt. 33, at 13. To establish a retaliatory discharge

12 claim, Castellano must prove that: (1) she engaged in statutorily protected activity; (2) an

13 adverse employment action was taken; and (3) the there is a causal link between the activity and

14 the adverse action. *Milligan v. Thompson*, 110 Wn. App. 628, 638, 42 P.3d 418 (2002) (citing

15 *Francom v. Costco Wholesale Corp.*, 98 Wn. App. 845, 861-62, 991 P.2d 1182 (2000)). The

16 burden shifting scheme is the same as with discrimination claims. *Id.* Satisfying these elements

17 sets forth a *prima facie* case of discrimination, and the burden then shifts to the employer to

18 show that it acted on a legitimate, nondiscriminatory basis for its actions. *Id.* If satisfied, the

19 ultimate burden shifts back to the employee to establish pretext. *Id.*

20        First, RCW 49.60.210 provides that it is unfair practice for an employer to discharge or

21 discriminate against any person because she has opposed discrimination. Thus, by filing a

22 complaint against Rothengass for a "hostile work environment," Castellano engaged in a

23

24 ORDER GRANTING IN PART AND DENYING IN
   PART DEFENDANT'S MOTION FOR SUMMARY
   JUDGMENT, DENYING PLAINTIFF'S MOTION
   TO STRIKE, AND GRANTING IN PART AND
   DENYING IN PART DEFENDANT'S MOTION
   TO STRIKE- 18

1  statutorily protected activity sufficient to satisfy the first element of a *prima facie* case. *See.* Dkt.

2  32, at 73.

3      Second, it has already been established that an issue of fact remains as to whether there

4  was an adverse employment action. Finally, in light of the relation between the potential adverse

5  employment action and Castellano's disability, issues of fact remain as to the link between the

6  statutorily protected activity, Castellano's disability, and her termination from employment.

7      The above pretextual analysis applies again, precluding summary judgment even if

8  Charter is able to establish a nondiscriminatory reason for the adverse employment action. The

9  alleged discrimination occurred after Castellano's diagnosis and related directly to her disability.

10  Castellano also no longer works at Charter and provides evidence of harassment and

11  discrimination that may have contributed to the termination of her employment.  For these

12  reasons, Castellano has provided sufficient evidence to survive summary judgment on her

13  retaliation claim.

14      Charter argued in its reply that summary judgment should be granted on Castellano's

15  retaliation claim because she did not provide "any response." Castellano's evidence and

16  arguments are sufficient to preclude summary judgment, as the above analysis indicates.

17  **G.    Summary Judgment Should be Granted on Castellano's FMLA Interference Claim**

18      Charter argues that there is no evidence that it violated Castellano's FMLA rights. Dkt.

19  25, at 25. The FMLA provides job security to employees who must be absent from work because

20  of their own illnesses, to care for family members who are ill, or to care for new babies. *Bailey v.*

21  *Southwest Gas Co*., 275 F.3d 1181, 1185 (9th Cir. 2002). It is unlawful for an employer to

22  interfere with, restrain, or deny an employee's exercise of FMLA rights. *Id*.; 29 USC §

23  2615(a)(1). The necessary elements of a FMLA interference claim are: 1) an entitlement to

24

ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT, DENYING PLAINTIFF'S MOTION
TO STRIKE, AND GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION
TO STRIKE- 19

1   FMLA leave; 2) an adverse action by plaintiff's employer, which interfered with plaintiff's right

2   to take FMLA leave; and 3) a showing that the employer's adverse action was related to the

3   exercise, or attempt to exercise, FMLA rights. *Bachelder v. Am. W. Airlines, Inc.,* 259 F3d 1112,

4   1124-26 (9th Cir 2001). Courts have been reluctant to read the FMLA as allowing unscheduled

5   and unpredictable, but cumulatively substantial, absences. See *Collins v. NTN–Bower Corp.*, 272

6   F.3d 1006, 1007 (7th Cir. 2001); *Mauder v. Metropolitan Transit Authority*, 446 F.3d 574 (5th

7   Cir. 2006).

8          Here, Charter does not dispute the first element.. Instead, Charter argues that it did not

9   interfere with Castellano's FMLA leave. Castellano argues that Charter interfered by creating

10  "insurmountable paperwork deadlines," "losing her paperwork, requiring clarifications that were

11  not needed, and repeating unnecessary paperwork after her diagnosis was permanent." Dkt. 28,

12  at 16. However, Castellano has not provided evidence showing that Charter's paperwork

13  deadlines were actually insurmountable or that Charter lost Castellano's paperwork. Even

14  assuming Castellano had proved these claims, Castellano has not shown sufficient interference

15  with her FMLA rights. Charter is allowed to seek clarification and authentication of medical

16  certification. *See* 29 C.F.R. § 825.307. And, most notably, Charter never denied Castellano leave

17  while they were seeking this clarification and authentication. Castellano has not produced

18  sufficient evidence to proceed on the second element of her FMLA interference claim. For that

19  reason, summary judgment should be granted on Castellano's FMLA interference claim.

20  **H.      Conclusion**

21         Castellano's claims should not be barred by judicial estoppel. Summary judgment as to

22  Castellano's hostile work environment claim, disparate treatment claim, failure to accommodate

23

24  ORDER GRANTING IN PART AND DENYING IN
    PART DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT, DENYING PLAINTIFF'S MOTION
    TO STRIKE, AND GRANTING IN PART AND
    DENYING IN PART DEFENDANT'S MOTION
    TO STRIKE- 20

1  claim, and retaliation claim should be denied. Summary judgment as to Castellano's FMLA

2  interference claim should be granted.

3                                  VI.    ORDER

4         Therefore, it is hereby

5         **ORDERED** that Defendant's Motion for Summary Judgment (Dkt. 25) is **GRANTED**

6  **IN PART** and **DENIED IN PART**: Defendant's motion for summary judgment on Plaintiff's

7  hostile work environment claim, disparate treatment claim, reasonable accommodation claim,

8  and retaliation claim is **DENIED.** Defendant's motion for summary judgment on Plaintiff's

9  FMLA interference claim is **GRANTED.**

10        Plaintiff's Motion to Strike (Dkt. 28) is **DENIED.** Defendant's Motion to Strike (Dkt. 33)

11  is **GRANTED IN PART** and **DENIED IN PART**: Defendant's motion to strike the declarations

12  of Stanley Horak and Angela Castellano is **DENIED.** Defendant's motion to strike the

13  declaration of Kristin Dillenburg (Dkt. 29) is **stricken to the extent stated above**.

14        The Clerk is directed to send uncertified copies of this Order to all counsel of record and

15  to any party appearing *pro se* at said party's last known address.

16        Dated this 19th day of November, 2013.

17

18                                  _Robert J Bryan_

19                                  ROBERT J. BRYAN
                                    United States District Judge

20

21

22

23

24  ORDER GRANTING IN PART AND DENYING IN
    PART DEFENDANT'S MOTION FOR SUMMARY
    JUDGMENT, DENYING PLAINTIFF'S MOTION
    TO STRIKE, AND GRANTING IN PART AND
    DENYING IN PART DEFENDANT'S MOTION
    TO STRIKE- 21